IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

JUL 1 8 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CYNTHIA J. FERENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: CV-01-PT-3281-E |
| | ) |
| NORTHEAST ALABAMA REGIONAL | ) |
| MEDICAL CENTER, | ) |
| | ) |
| Defendant. | ) |

**ENTERED**

JUL 1 8 2002

## MEMORANDUM OPINION

This cause comes to be heard on defendant Northeast Alabama Regional Medical

Center's ("NEARMC") Motion for Summary Judgment filed on June 7, 2002.

### FACTS[1]

NEARMC is a regional hospital located in Anniston, Alabama. On May 7, 1974, the

Council of the City of Anniston established the Regional Medical Center Board ("RMCB"),

which was a body corporate and politic organized under the provisions of § 190(1), Title 22,

Code of Alabama, now codified at Alabama Code § 22-21-5 (1975).[2] NEARMC is under the

management of the RMCB. It provides health care services to the public and is a nonprofit

entity not subject to local taxation.

Plaintiff Cynthia J. Ference ("Ference") began working as an Office Supervisor in the

Radiology Department at NEARMC on March 8, 2000. Her direct supervisor was Director of

Radiology, Sheridan Belcher ("Belcher").

On March 20, 2000, Ference signed an orientation form indicating that she had been

---

[1] Stated favorably to the plaintiff.

[2] Members of the RMCB are appointed by public officials.

*30*

presented with a copy of NEARMC's Sexual Harassment Policy ("Policy") and had been

provided an opportunity to ask questions about the Policy.[3]   Ference understood that NEARMC

had a sexual harassment policy in place during her employment.  The Policy outlined an

employee's responsibility for reporting a claim of sexual harassment:

> II.    RESPONSIBILITY
>
> A.    Employee - Any employee, without fear of reprisal, who believes that he or she has been the subject of sexual harassment should report the alleged act immediately to his or her Supervisor, Department Director *or* the Vice President of Human Resources.

(Emphasis provided).  Ference was herself a Supervisor designated to receive complaints.

Belcher, as Department Director, was a designated employee to receive complaints.

Additionally, Mike Simms, NEARMC's Vice President of Human Resources was designated to

receive complaints under the terms of the Policy.[4]

After her employment began in March, Belcher began recommending sexual relations

with Ference and made degrading comments to her.  As for the sexual comments, Belcher told

Ference she should learn to use her body because her brain was not worth a "gd penny."  He told

her that the doctors thought her work was good, but that he was sure they would like her more if

she would use her breasts to her advantage, and that he would not mind "testing the product."[5]

Later in April, Belcher told Ference take off her pants and leave her "ass print" on his desk.  He

also showed her a small room with a bed in it and commented that they "could have a lot of fun

---

[3]  Ference does not remember receiving a copy of the Policy.

[4]  NEARMC asserts that it effectuates the Policy by explaining the Policy during employee orientation and by providing a copy of the Policy to each employee in the Employee Handbook.  It also claims that it conducts training for its managers on the Policy.

[5]  In response to these two comments, Ference told Belcher that if she intended to make a living that way, she would work at the Platinum Club, and that she was a professional and wanted to be treated like one.

in there." In September of 2000, Belcher suggested to her that the two play with the ultrasound equipment in a sexual manner. Belcher told Ference she was nice to look at but did not have a brain. He asked her what she would do if he called her on the phone and asked her "What am I holding in my hand"? Belcher also rubbed Ference's arm on two occasions.

As for the degrading comments, Belcher called Ference an "idiot." He once called her a "fucking idiot" because she signed her last name with a lower case letter, and told her that she should let her child teach her how to write the "gd" alphabet. Belcher once kicked the hallway wall, slammed his fist against it, and told Ference to get "your Goddamned ass in my office right now." He also hollered at her to "get off the fucking phone" and slung the phone off her desk. In May of 2000, Belcher showed her a pistol that he had in his desk and told her that he was prepared to shoot a person who caused him to lose a job he held in Birmingham.[6] Belcher made comments about firing her and stated several times that "he could make or break [her]." He told her that he had been sued before and won because he knew how to keep notes, and that if she went over his head, she would regret it.

Ference informed Belcher that his behavior scared her and that his comments were inappropriate. He would often call her a "pussy" in response to her comments. Ference did not report Belcher's behavior to anyone in NEARMC Human Resources. Ference did report Belcher's conduct to Cheryl Merritt, a nonsupervisory pharmacy technician and to Tracie Schmiedl, a coworker in the Radiology Department. Additionally, Ference discussed her working arrangement with Belcher to Gary Schoenberg ("Schoenberg"), Vice President of

---

[6] Ference also claims that Belcher showed her a picture of a man's head caved in and said "this is what somebody would look like who crosses me."

Professional Services at NEARMC.[7] Ference complained of Belcher's conduct to Schoenberg on three occasions. On the first occasion, she told Schoenberg she was not comfortable discussing anything with him based on her earlier discussion with Belcher. Schoenberg informed her that he "was aware there were problems."[8] On the second occasion, Ference told Schoenberg that she did not understand how somebody could treat people the way Belcher treated her and "get away with it." She then told him that Belcher "scared her to death" and that he was either in a good mood talking about sex or was irate.[9] Later, after she resigned, Schoenberg informed Ference that he was aware of Belcher's cursing.[10]

Ference tendered her resignation in August of 2000. Belcher told her that her resignation was a mistake because she had a daughter, and told her that she did not have to worry about buying the house she was interested in because she could move in with him. He also told her that if she wanted a good recommendation when she left, she better stay longer than thirty days. After talking with Schoenberg, Ference decided to remain employed at NEARMC.

In September of 2000, Ference began interviewing for a job with BellSouth Mobility. She had three interviews and accepted a job earning more money and providing better benefits.

---

[7] According to Ference, after she initially met Schoenberg, Belcher called her into his office, slammed his hand down on his desk, and demanded to know what she discussed with Schoenberg. She states that Belcher informed her that he would find out what they discussed, and that it was in her best interests to "keep her mouth shut." Schoenberg is Belcher's immediate supervisor.

[8] Ference could not remember telling Schoenberg about Belcher making any sexual comments during this initial meeting.

[9] According to Ference, Schoenberg told her that he was aware of several complaints about Belcher's temper and that he would continue to work with him about his temper.

[10] According to Ference, Schoenberg told her that he did not know what he was going to do with Belcher.

4

She did not tender a second resignation.[11]  She stopped working at NEARMC on September 27, 2000.

On December 20, 2000, Ference filed a charge of discrimination with the EEOC.  The EEOC issued a Notice of Right to Sue upon her request on September 21, 2001.  On December 19, 2001, Ference filed a civil action alleging that she was subject to a sexually hostile work environment and was constructively discharged from her employment at NEARMC.

## ARGUMENTS

NEARMC argues that summary judgment is appropriate as to Ference's hostile work environment and constructive discharge claims because there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Addressing Ference's hostile work environment claim, NEARMC contends that the claim must fail because Ference cannot demonstrate that Belcher's conduct was sufficiently severe or pervasive to alter her working environment.  According to NEARMC, Ference must demonstrate that (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) a basis for holding the employer liable.  *See Gupta v. Florida Board of Regents*, 212 F.3d 571, 582-83 (11th Cir. 2000).  NEARMC argues that after examining all the comments collectively, Ference cannot establish a prima facie case because the harassment was not sufficiently severe or pervasive to alter the terms and conditions of employment.  First, NEARMC notes that the court cannot consider the nongender related comments in determining whether the severe and pervasive requirement has been met.  *Relying*

---

[11]  Ference contends that she did not change her resignation date of August 1, 2000.  She states that she worked out a notice, staying longer than thirty days due to Belcher's intimidation.

*on Gupta*, 212 F.3d at 583 ("[T]he statements and conduct must be of a sexual or gender-related nature - 'sexual advances, requests for sexual favors, [or] conduct of a sexual nature,' . . . before they are considered in determining whether the severe or pervasive requirement is met."). Second, NEARMC claims that Belcher's gender-related comments do not rise to the level of severity and pervasiveness necessary for harassing conduct to constitute a violation of Title VII. In support of this claim, NEARMC cites the court to various United States Courts of Appeal decisions in this area.[12]

Even if Ference was able to establish a hostile environment claim, NEARMC argues that it can prevail by establishing an affirmative defense, that is, by demonstrating "(a) that [it] exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2270 (1998). NEARMC claims that it can establish the *Ellerth* affirmative defense for two reasons. First, it states that no tangible job action has occurred. According to NEARMC, the circuit courts that have examined the *Ellerth* and

---

[12] NEARMC contends that the following decisions rejected Title VII claims based on more serious conduct than Belcher's alleged conduct. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999) (holding that plaintiff's allegations fall "well short of the level of either severe or pervasive conduct sufficient to alter [her] terms or conditions of employment" where plaintiff alleged that her supervisor stated that he was "getting fired up" when she entered his office, one occasion where he rubbed his hip against hers while touching her shoulder and smiling, an instance where he made a sniffing sound and stared at her groin, and constantly followed and stared at her); *Shepard v. Comptroller of Public Accounts of Texas*, 168 F.3d 81, 872-73 (5th Cir. 1999) (holding that several incidents over two-year period, including comments about plaintiff's nipples and thighs, touching plaintiff's arm, and attempts to look down her dress were insufficient to establish hostile environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir. 1998) (holding that teasing of plaintiff, subjecting her to sexual jokes, commenting about her dress, repeatedly staring at her breasts, and four incidents of touching her arm, fingers or buttocks insufficient to support hostile environment claim); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (holding that five sexually oriented, offensive statements over sixteen-month period, including incident where harasser put his arm around plaintiff, looked down her dress and stated "well, you got to get it when you can," insufficient to show hostile environment claim).

*Faragher* affirmative defense have held that a constructive discharge claim cannot satisfy the tangible job action requirement. *Citing Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 294 (2d Cir. 1999); *Turner v. DowBrands, Inc.*, No. 99-3984, 2000 U.S. App. LEXIS 15733, at *4 (6th Cir. June 26, 2000).[13] Second, it contends that it established and implemented a Sexual Harassment Policy, as well as comprehensive procedures for making complaints. It claims that Ference unreasonably failed to take advantage of the avenues of redress available to her. In support of this claim, NEARMC points out that Ference failed to report Belcher's behavior to the individual identified in NEARMC's Policy, Mike Simms, Vice President of Human Resources.[14] Because Ference failed to adhere to the Policy's notice requirement, NEARMC concludes, Ference unreasonably failed to take advantage of any preventative or corrective opportunities. *Relying on Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1302 (11th Cir. 2000) (holding that company did not have knowledge of alleged harassment where plaintiffs complained to mid-level managers and not to the managers designated to receive complaints under defendant's sexual harassment policy).

Turning to the merits of Ference's constructive discharge claim, NEARMC argues that this claim must fail for two reasons. First, it asserts that Ference's failure to follow the Policy's notice procedures deprived it of an opportunity to correct the problems she was experiencing. Thus it contends that there is no evidence that it engaged in conduct that created intolerable

---

[13]  NEARMC notes that the Eleventh Circuit stated in *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 n.2 (1997), that constructive discharge can qualify as an adverse employment action under the ADEA. However, NEARMC points out that *Poole* was decided prior to *Faragher* and *Ellerth* and consequently, did not discuss the term "tangible employment action" as it relates to the *Faragher* and *Ellerth* defense.

[14]  The other two positions designated in the Policy for notice were Supervisor and Department Director. NEARMC asserts that Ference, as Supervisor, would not be expected to report the alleged harassment to Belcher, the Department Director.

working conditions. Second, it claims that Ference did not resign her employment based on alleged conditions at NEARMC. Instead, it contends that Ference resigned to accept a job earning more money and providing better benefits.

Finally, NEARMC argues that Ference's claim for punitive damage must fail for two reasons. First, it asserts that it is not an entity subject to punitive damages. In support of this assertion, it states that it is controlled and managed by the RMCB. It claims that the RMCB is organized pursuant to Alabama Code § 22-21-5 (1975). Furthermore, it states that the Alabama Legislature amended this statute in 1991 to provide that public bodies organized under it have the same powers as a public health care authority. It claims that public bodies organized under the Health Care Authorities Act of 1982, Alabama Code § 22-21-310, et seq., are considered political subdivisions. Thus, RMCB is a political subdivision of the State of Alabama and not subject to punitive damages. *See* 42 U.S.C. § 1981a(b)(2).

Second, even if punitive damages were available, NEARMC argues that Ference is not entitled to any because she has not demonstrated that it "engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights" of Ference. *Id.* at § 1981a(b)(1). It claims that the United States Supreme Court has held that employers can assert a good faith defense where the "'employment decisions of managerial agents . . . are contrary to the employer's 'good-faith efforts to comply with Title VII.'''" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545 (1999)). NEARMC asserts that Ference cannot demonstrate that Belcher's actions were contrary to its good-faith efforts to comply with Title VII. It implemented the Policy providing Ference with avenues for redress. It notes that Ference acknowledged in writing that the Policy was explained to her. Furthermore, it points out that

8

Ference admits that she did not complain to NEARMC's Human Resource Department. In light of these facts, NEARMC concludes, Ference's claim for punitive damages must fail.

In response, Ference argues that the facts alleged constitute actionable sexual harassment under the standard articulated in *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982), because she has suffered a tangible job detriment and a hostile working environment created by her supervisor.[15] She states that the totality of the circumstances provides compelling evidence of her hostile work environment. She argues that she complained of Belcher's behavior repeatedly for six months. She states that NEARMC ignored these claims.[16] Ference contends that Belcher's unwelcome sexual advances and verbal and physical conduct resulted in a tangible employment action – constructive discharge. According to Ference, constructive discharge is a materially adverse employment action which is cognizable under Title VII: "Employee alleging employment discrimination claim can assert a claim of constructive discharge when he is forced to resign because his working conditions, from the standpoint of the reasonable employee, have become unbearable." *Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136 (7th Cir. 2001).

Ference further claims that the "*Faragher/Ellerth* affirmative defense allows an employer to avoid strict liability for one employee's sexual harassment of another. The defense is only

---

[15] According to Ference, she has properly alleged claims of hostile work environment and *quid pro quo* harassment.

[16] Ference claims that Schoenberg had a duty under the policy to report complaints of sexual harassment under Section II.C of the Policy:

> All complaints of sexual harassment should be referred to the Vice President of Human Resources. The Vice President will attempt to ensure complaints of sexual harassment are resolved promptly and effectively. Complaints should be investigated and employees should be advised of the findings and resolutions. Every effort will be made to resolve complaints of sexual harassment through internal investigations in a confidential manner.

According to Ference, Schoenberg did not contact the Vice President of Human Resources.

9

available, however, if no adverse tangible employment action was taken by the company."
*Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 265 (4th Cir. 2001). She contends that
she followed the Policy by reporting harassment to Belcher and Schoenberg. Thus, she asserts
that she had no further duty to report Belcher's conduct. *Relying on Distasio v. Perkin Elmer
Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) ("When a plaintiff reports harassing misconduct in
accordance with company policy, she is under no duty to report it a second time before the
company is charged with knowledge of it.").

Addressing the claim for punitive damages, Ference cites the court to *Dudley v. Wal-
Mart Stores, Inc.*, 166 F.3d 1317 (11th Cir. 1999). According to Ference, *Dudley* stands for the
proposition that punitive damages may be considered where the "discriminating employee was
high up the corporate hierarchy" or where "higher management countenanced or approved [his]
behavior." *Id.* at 1323.

NEARMC replies by pointing out that Ference has not asserted a *quid pro quo*
harassment claim in the complaint. To support of this contention, NEARMC notes that Ference
has not alleged facts supporting harassment "occur[ing] when a supervisor demands plaintiff's
acquiescence to sexual overtures in exchange for tangible job benefits." *Pipkins v. City of
Temple Terrace*, 267 F.3d 1197, 1200 (11th Cir. 2001). Furthermore, NEARMC states that
plaintiff's reliance on case law from other circuits in support of her hostile work environment
claim is to no avail. It claims that the Eleventh Circuit precedent on this issue prevents Ference
from establishing this claim. Additionally, it claims that courts have held that a constructive
discharge claim cannot satisfy the tangible job action set out in *Faragher* and *Ellerth* and, thus,
such an allegation does not prevent it from asserting the affirmative defense. *Citing Caridad* and

10

*Turner, supra.*[17]  It also states that the affirmative defense is applicable because Ference's

reporting of the harassment to Belcher can hardly be characterized as providing it with notice of

her alleged claims.  Finally, NEARMC argues that Ference has conceded the claim for punitive

damages.  It points out that Ference failed to address its argument that it is not an entity subject

to punitive damages.[18]  Additionally, it claims that Ference has failed to address its argument that

she cannot demonstrate that Belcher's actions were not contrary to its good-faith efforts to

comply with Title VII.

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings,

discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986).  A dispute is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the

initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the

burden of showing that there are specific facts demonstrating that there is a genuine issue of fact

for trial. *Id.* at 324.  "When deciding whether summary judgment is appropriate, all evidence

and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the

---

[17]  NEARMC claims that the cases cited by Ference do not address the issue of whether constructive discharge amounts to a tangible employment action for purposes of the affirmative defense.

[18]  In a Supplemental Objection to Motion for Summary Judgment, Ference argues that the RMCB is not a public body organized under the Health Care Authorities Act of 1982, Alabama Code § 22-21-310, et seq. (1975). She states that there is no evidence that the RMCB has adopted the authority provided by the Act.  She argues that classifying the RMCB as a political subdivision is inconsistent with the provisions of the ordinance or resolution under which it came into existence, contrary to Alabama Code § 22-21-5(b) (1975).

non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

### CONCLUSIONS OF THE COURT

For either or both reasons argued by the defendant, the court agrees that the defendant is not subject to punitive damages. The court particularly agrees with the public hospital argument.

The court concludes that while the *Mendoza* case may suggest a different decision, the evidence appears to be sufficient to support a hostile environment claim.[19] The court further concludes, however, that there was no adverse employment action taken by the defendant in that an alleged constructive discharge does not satisfy such requirement.

It would further appear to the court that Schoenberg would be considered a "Supervisor" of both plaintiff and Belcher. The Policy does not require a report to a *direct* Supervisor. It is not clear whether plaintiff reported sexual harassment or merely general bad temper and general harassment to Schoenberg. The key issue would appear to be whether plaintiff appropriately reported sexual harassment.

The court will not file an order at this time. It will allow the parties an additional ten days to comment on the foregoing. If the court denies the motion, it will likely certify its order pursuant to 28 U.S.C. § 1292(b).

---

[19] One apparent difference in this case from *Mendoza* is that the Eleventh Circuit emphasized that the alleged harasser never said any significant thing.

12

This ___18___ day of July 2002.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE